IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

## STATE OF TENNESSEE v. CHARLES BRADLEY MIMS

**Appeal from the Circuit Court for Chester County**
**No. 15-CR-10       Roy B. Morgan, Jr., Judge**

_____

**No. W2015-02072-CCA-R3-CD  -  Filed July 19, 2016**

_____

A Chester County jury convicted the Defendant of theft of property valued over $500, and the trial court sentenced him as a Career Offender to six years of incarceration. On appeal, the Defendant contends that the evidence presented at trial is insufficient to sustain his conviction and that the trial court erred when it sentenced him. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

George Morton Googe, District Public Defender; Kandi Kelly Collins, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Charles Bradley Mims.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

### A. Trial

This case arises from the theft of a livestock trailer on Friday, September 12, 2014. For this offense, a Chester County grand jury indicted the Defendant for theft of property valued over $1,000. At the Defendant's trial on these charges, the parties presented the following evidence: Clarence Wells testified that he owned a farm on Wells Road and

that he also owned trailers to transport his cattle. On September 12, 2014, he went to his farm at around 8:00 a.m. He left at some point and, when he returned at 4:00 p.m. with his wife, his fourteen-foot cattle trailer was missing. He said that the trailer was painted with old yellow primer but had a good set of eight-ply tires. Inside the trailer, a board had been nailed over a portion of the floor.

Mr. Wells said that he called his brother and asked about the whereabouts of the trailer. His brother said he had not seen the trailer when he went to the farm at 12:00 p.m. that day and thought that it was in Mr. Wells's possession. Mr. Wells said that he called the Sheriff's Department to make a report. Mr. Wells said that he had owned the trailer for approximately eighteen months and that he had purchased it for $1,000.

Mr. Wells testified that he went to an establishment called Darty Trailer the day after his trailer was stolen to see if anyone had attempted to sell his trailer to them. When he arrived, he spoke with the owner, Mr. Darty, who informed him that he received the trailer at 11:00 a.m. on the Friday that it was stolen. Mr. Darty told him that he had sold Mr. Wells's cattle trailer for $2,500 later that same day. Mr. Darty assisted Mr. Wells in getting the trailer returned. Mr. Wells asked Mr. Darty who had sold the trailer to him, and Mr. Darty gave only the name "Brad."

During cross-examination, Mr. Wells testified that he did not have to repurchase his trailer but that it cost him his time and gas expense to get the trailer returned. He said that, when the trailer was returned, the lights and some of the wires were pulled out from under the trailer, but he was able to repair the trailer himself. Mr. Wells said that he still owned the trailer at the time of trial and that it was working properly.

Charles Darty testified that he owned Darty Trailer Sales and that he had been in the trailer business for almost forty years. Mr. Darty said that he knew the Defendant, having had brief conversations with him. The Defendant discussed with Mr. Darty that he wanted to trade for a trailer. The Defendant showed him a trailer that Mr. Darty thought was "quite junky," which Mr. Darty later learned belonged to Mr. Wells. The Defendant came to Mr. Darty's trailer store the afternoon of September 12, 2014, offering to sell the trailer that he had in his possession. Mr. Darty said he gave the Defendant $665 for the trailer and that he planned to sell the trailer for profit.

Mr. Darty testified that Mr. Wells came to Darty Trailer Sales on the Saturday after Mr. Darty purchased the trailer from the Defendant. Mr. Wells described the stolen trailer, and Mr. Darty realized that he had sold the trailer that morning for $895. Mr. Darty said that he helped Mr. Wells retrieve the trailer and returned the money to his customer. Mr. Darty said he called the Defendant, who maintained that the trailer

belonged to him at the time he sold it. Mr. Darty said that he identified the Defendant from a photographic lineup that police showed to him.

During cross-examination, Mr. Darty testified that the Defendant had been to Darty Trailers a couple of times before the day he came to sell the trailer. On the day that he came to sell the trailer, the Defendant arrived "after lunch." He said he did not require the Defendant to show proof of ownership because "on a trailer that age, there probably [was] no proof of ownership." He said the State of Tennessee did not require a title and tag for a trailer, old or new.

Jason Crouse, an investigator with the Chester County Sheriff's Department, testified that he investigated the theft in this case. He said that the theft report was made on September 12, 2014, and that he did not speak with Mr. Wells until after Mr. Wells had recovered his trailer. Investigator Crouse said that he learned that the Defendant may have taken the trailer, so he showed Mr. Darty a photographic lineup on September 15, 2014, that included the Defendant's picture. Mr. Darty identified the Defendant as the man who had sold him the trailer.

The Defendant called as a witness Dennis Maness, a deputy with the Chester County Sheriff's Department, who testified that he took Mr. Wells's report of a stolen trailer. Mr. Wells had told him that the stolen trailer was valued at $4,500. During cross-examination, Deputy Maness said that Mr. Wells was "pretty mad that somebody stole his trailer" at the time that he made his report. Deputy Maness said that he did not write the report of this incident until the day after Mr. Wells reported it. He used his notes to write his report.

Based upon this evidence, the jury convicted the Defendant of theft of property valued over $500 but less than $1,000.

### B. Sentencing

At the Defendant's sentencing hearing, the parties agreed that the Defendant qualified as a Career Offender and that his sentence should be six years to be served at 60%. The State offered and the trial court entered the presentence report into evidence. The State noted that the Defendant was on parole for theft offenses involving trailers at the time he stole the trailer in this case. The State noted the Defendant's lengthy criminal history. The State asked the trial court to sentence the Defendant to six years of incarceration, to be served consecutively to the sentence he would receive for violating his parole.

3

The Defendant contended that he had three years remaining on the sentence for which he was on parole at the time he committed the present offense. He noted that his offense did not cause or threaten any serious bodily injury and that he had never committed a violent offense. The trial court interjected that the Defendant had been convicted of ten counts of wanton endangerment, and first degree fleeing and abating police in Fulton, Kentucky. The Defendant asked the trial court to order split confinement.

The trial court found:

[The Defendant] has accomplished two things for sure. The jury has found him guilty, but he's labeled himself a thief. A number of self-convictions and he's reached the level of career offender. They call it career offender for a reason. I didn't make it up. That's what it is in the books. Career offender.

Under the circumstances as agreed a 6-year sentence is the sentence to impose and the release eligibility is at 60 percent, [the Defendant]. That's how much of a sentence you have to serve if you're serving sentence before you're eligible for release, but it's not an automatic release time. So that is the sentence. Sixty percent career offender on a 6-year sentence.

You were paroled out on the Chester County case. So you've been in and out of jail. You even had that 10-year sentence you paroled out on and it's mandated by law since this offense occurred while you were on parole that it be consecutive to the Chester County case number, which the State alluded to.

There is no restitution due and you're not to have any contact whatsoever with the witnesses or victims in the case. Based upon your entire record there is no way the Court could consider anything other than you serve your sentence.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence presented at trial is insufficient to sustain his conviction and that the trial court erred when it sentenced him.

4

## A. Sufficiency of Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction because Mr. Darty was the only person to identify him, and Mr. Darty's testimony was inconsistent. The State counters that credibility issues are within the domain of the jury and cannot be revisited on appeal. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

"The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe

their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

To support Defendant's conviction for theft of property valued at more than $500 but less than $1,000, the State was required to prove that Defendant violated Tennessee Code Annotated section 39-14-109, which states: "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent." T.C.A. § 39-14-103(a) (2014). Theft of property valued at more than $500 but less than $1000 is a Class E felony. T.C.A. § 39-14-105(a)(2) (2014).

In the case under submission, the Defendant contends that the proof of his identity as the perpetrator was insufficient to support his conviction. The identity of the perpetrator is "an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." *Id.* (internal quotation marks omitted). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

We conclude that the evidence of the Defendant's identity is sufficient to support his conviction for theft. Mr. Wells noticed that his trailer had been taken during the day on Friday, September 12, 2014. Prior to that day, Mr. Darty said that he had spoken with the Defendant on several occasions. On September 12, 2014, the Defendant came to him with a used trailer that the Defendant wanted to sell. Mr. Darty gave the Defendant $665

6

for the trailer. He positively identified the Defendant from a photographic lineup and in court. Mr. Darty had written down the Defendant's name as "Brad" and his address at the time of the transaction. The Defendant's possession of the trailer shortly after it was taken, Mr. Darty's recognition of him, and Mr. Darty's writing of the name "Brad," support the Defendant's identity as the perpetrator of this offense. The jury as the trier of fact resolved any inconsistent testimony by its verdict. The Defendant is not entitled to relief on this issue.

## B. Sentencing

The Defendant does not challenge his status as a Career Offender or the length of his sentence, but he contends that the trial court erred when it sentenced him to a term of confinement rather than an alternative sentence because it failed to properly articulate and weigh the enhancement and mitigating factors. The State counters that the record supports the trial court's conclusion that the Defendant was a Career Offender and did not deserve an alternative sentence. We agree with the State.

The parties in this case agreed that the Defendant was a Career Offender and that the length of his sentence should be six years and should run consecutively to his sentence in a theft case for which he was on parole at the time that he committed this theft.

This Court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. § 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'"

*State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014).

The record reflects that the trial court considered all the appropriate principles and purposes of sentencing. In denying the Defendant's request for alternative sentencing, the court relied heavily upon the Defendant's previous criminal convictions, emphasizing that the Legislature had termed it "Career Offender" for a reason. The record also supports that confinement was necessary to protect society from the Defendant's criminal conduct because the Defendant had continued engaging in criminal conduct for the majority of his life. *See* T.C.A. § 40-35-103(1)(A). Likewise, the record reflects that the Defendant had received the benefit of parole, and was in fact on parole for a theft of a trailer when he stole the trailer in this case. *See* T.C.A. § 40-35-103(1)(C). Although the Defendant was eligible for alternative sentencing, his previous convictions resulted in his unfavorable candidacy for alternative sentencing. *See* T.C.A. § 40-35-102(6)(A) (2014) (stating that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing"). The trial court did not abuse its discretion by denying his request for alternative sentencing, and the Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE